**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **CHONTE LONG**, |
| Plaintiff, |
| v. |
| **MOTION PICTURE ASSOCIATION OF AMERICA dba MPAA**, |
| Defendant. |

Case No. 19-cv-2088 (CRC)

**OPINION AND ORDER**

Plaintiff Chonte Long brings this employment discrimination suit against her former employer, the Motion Picture Association of America (MPAA).  Now before the Court is Ms. Long's Motion to Compel production of certain documents and the deposition of two of MPAA's former in-house lawyers.  For the reasons explained below, the Court will grant the motion in part and deny it in part.

**I.    Background**

Ms. Long alleges that MPAA fired her for complaining about sexual harassment and supporting a coworker's sexual harassment claim, and attempted to cover up that retaliation by including her in a mass layoff.  See Compl. ¶ 1.  During discovery on Long's claims, the parties disagreed about the propriety of certain discovery relating to that layoff involving MPAA's in-house counsel.  On September 30, 2021, Long filed a Motion to Compel addressing several issues still in dispute.[1]

---

[1]  After discovery closed on November 20, 2020, and at the request of the parties, this Court stayed the case and referred the parties to mediation.  See Minute Order of Aug. 7, 2020; Minute Order of Dec. 3, 2020.  After the parties failed to reach a settlement, Long moved to reopen discovery for the limited purpose of exploring the MPAA General Counsel's office's role

A.  <u>Documents</u>

Long requests production of several documents.  Most significantly, she asks for full and unredacted versions of a set of notes taken by Kelly McMahon during her tenure as Vice President and Corporate Counsel for MPAA.[2]  <u>See</u> Pl. Mot. Compel at 14, 32; Def. Opp., Ex. 1, at ¶ 4 ("McMahon Decl.").  McMahon took these hand-written notes during a series of meetings from approximately early 2016 to April 2017.  <u>See</u> McMahon Decl. at ¶¶ 6–9.  In those meetings, several high-level MPAA officials discussed a proposed "reduction-in-force" ("RIF") of the organization's Administration Department as part of its move to a new office.  <u>Id.</u>; Def. Opp. at 3–4.  MPAA ultimately included Long in that layoff in June 2017.  <u>See</u> Pl. Mot. Compel, Ex. 11.  MPAA contends McMahon attended these meetings in her capacity as in-house legal counsel and argues her notes are therefore protected from discovery as attorney work product. <u>See</u> Def. Opp. at 14–16.

During this dispute, MPAA has twice revealed a set of four pages of these notes—with entries dated April 8, 2016; December 9, 2016; February 15, 2017; and April 19, 2017.  <u>See</u> Pl. Mot. Compel, Ex. 9.  The purpose of both disclosures was to show that MPAA decided to include Long in the RIF *before* her participation in any protected activity, thus negating her

_____

in her firing.  <u>See</u> Pl. Mot. Reopen at 3.  The Court granted the Motion to Reopen and set a schedule for briefing of a motion to compel.  <u>See</u> Minute Order of Aug. 30, 2021.

MPAA claims much of Long's resulting motion is outside the scope of the reopened discovery period, and it asks the Court to deny the Motion to Compel on that ground alone.  <u>See</u> Def. Opp. at 8–10.  The Court declines to do so.  Although some of Long's discovery challenges are indeed untimely, the requests in the Motion to Compel are generally consistent with how Long presented the issues when she asked to reopen discovery.

[2] McMahon is now a Senior Vice President at MPAA, and no longer works in the General Counsel's office.  <u>See</u> Def. Opp, Ex. 1, at ¶ 3.

retaliation charge.  See Pl. Mot. Compel, Exs. 16, 17.  First, MPAA shared redacted copies of these four pages with Long's counsel during pre-suit settlement discussions in 2017.  See Pl. Mot. Compel, Ex. 17.  The parties debate whether any confidentiality agreement in place during these negotiations prevented this disclosure from operating as a waiver of applicable privileges. See Def. Opp. at 17; Pl. Reply at 7–9.  Second, MPAA included these same four pages as an attachment to its confidential response to Long's Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC).  See Pl. Mot. Compel, Ex. 16.  In a footnote to that submission, MPAA stated that its response was "solely for the information of the" EEOC and could not be "release[d] . . . to any other person or entity without the MPAA's written consent."  Id.  Long seeks the production of unredacted copies of these four pages.  See Pl. Mot. Compel at 14.  She also asks for production of any other notes McMahon took during meetings about the RIF.  See Pl. Mot. Compel at 32.  As Long points out, MPAA's privilege log suggests that notes from several other meetings exist.  See Pl. Mot. Compel, Ex. 8 (identifying additional McMahon notes from meetings on October 17, 2016; October 26, 2016; and December 8, 2016); Pl. Reply at 20.

Beyond McMahon's notes, Long also asks the Court to compel production of all remaining documents on MPAA's privilege log.  These documents include several emails between McMahon and other MPAA officials regarding employee layoffs, over which MPAA has claimed attorney-client privilege.  See Pl. Mot. Compel, Ex. 8.  Long challenges the sufficiency of MPAA's privilege log, which she says does not satisfy MPAA's burden to establish the privilege applies.  See Pl. Mot. Compel at 15–17.  As a result, she asks the Court to deem the inadequate log a waiver of the privilege.  See id. at 18–19.

B.  <u>Depositions</u>

In addition to her document requests, Long also asks the Court to order two depositions. First, she would like to depose McMahon about her meeting notes, as well as the decision to include Long in the RIF more broadly.  <u>See</u> Pl. Reply at 19.  Second, she asks to depose Steven Fabrizio, at the time MPAA's General Counsel and McMahon's boss.  <u>See</u> Pl. Reply at 16–18. She proposes to depose Fabrizio about his involvement in the layoff decision as well as allegations related to Fabrizio's own sexual misconduct.  <u>See id.</u>  MPAA opposes both efforts to depose its former in-house lawyers.  <u>See</u> Def. Opp. at 11–13, 19–20.

## II.  **Legal Standards**

"When a party objects to a request for production of documents under Federal Rule of Civil Procedure 34(a)(1), the requesting party may move for an order compelling disclosure of the withheld material."  <u>Felder v. Washington Metro. Area Transit Auth.</u>, 153 F. Supp. 3d 221, 224 (D.D.C. 2015) (citing Fed. R. Civ. P. 37(a)).  "The party that brings the motion to compel bears the initial burden of explaining how the requested information is relevant."  <u>Id.</u> (internal quotation marks omitted).  "The burden then shifts to the non-moving party to explain why discovery should not be permitted."  <u>Id.</u> (internal quotation marks omitted).  "If a party has withheld documents on the grounds that they are privileged, the withholding party 'bears the burden of proving the communications are protected.'"  <u>Id.</u> (quoting <u>In re Lindsey</u>, 158 F.3d 1263, 1270 (D.C. Cir. 1998)).

"A party who seeks a deposition under Rule 30, and who believes that the opposing party has failed to meet its obligations to produce a witness to testify in accordance with that Rule, may, after conferring in good faith with the opposing party, seek to compel discovery pursuant to Federal Rule of Civil Procedure 37."  <u>Zimmerman v. Al Jazeera Am., LLC</u>, 329 F.R.D. 1, 5

(D.D.C. 2018) (citing Fed. R. Civ. P. 37(a)(1), (d)).  "[G]enerally speaking, [a] party is entitled to depose a witness on all relevant issues [about] which the witness has knowledge.'"  Alexander v. FBI, 186 F.R.D. 71, 74 (D.D.C. 1998) (internal quotation marks omitted) (second alteration in original).  For that reason, "the complete prohibition of a deposition" is an "extraordinary measure[] which should be resorted to only [o]n rare occasions."  Id. at 75.

## III.  Analysis

### A.  McMahon Notes

Long first seeks to compel full, unredacted production of any notes taken by Kelly McMahon related to the RIF.  See Pl. Mot. Compel at 14, 32.  As detailed below, the Court grants this request in part:  Because it has waived the claimed attorney work-product privilege, MPAA must produce all pages of the McMahon notes related to the RIF.  However, the Court will allow MPAA to redact any work product that reveals McMahon's mental impressions, conclusions, opinions, or legal theories.

#### 1.  Legal Principles

Despite the generally broad scope of civil discovery, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative[.]"  Fed. R. Civ. P. 26(b)(1), (3)(A); see also Hickman v. Taylor, 329 U.S. 495, 511 (1947) (placing burden to show necessity on party seeking discovery, given "the general policy against invading the privacy of an attorney's course of preparation").  Such attorney work product can be discovered, however, if it otherwise satisfies the relevance and proportionality standards of Rule 26(b)(1), and if the requesting party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(i)–(ii).

Still, in ordering this discovery, courts must "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(B).

Under these rules, courts therefore distinguish between fact and opinion work product. "'[T]o the extent that work product contains relevant, nonprivileged *facts*,' the work product doctrine 'merely shifts the standard presumption in favor of discovery and requires the party seeking discovery to show adequate reasons why the work product should be subject to discovery.'"  FTC v. Boehringer Ingelheim Pharms., Inc., 778 F.3d 142, 153 (D.C. Cir. 2015) (quoting In re Sealed Case, 676 F.2d 793, 809 (D.C. Cir. 1982) ("Sealed Case I")).  But "a party generally must make an extraordinary showing of necessity" to obtain opinion work product, id., which is "virtually undiscoverable," Dir., Office of Thrift Supervision v. Vinson & Elkins, LLP, 124 F.3d 1304, 1307 (D.C. Cir. 1997).

### 2. *Application*

The Court will compel partial production of the McMahon notes.  While MPAA has satisfied its burden to show the work-product privilege applies, it has waived the privilege's protections here by disclosing the notes to an adversary.  So, subject to the limitations set out below, MPAA must produce the notes.

### a. Work-Product Privilege

To compel production of the McMahon notes, Long must first establish that the requested information is relevant.  Felder, 153 F. Supp. 3d at 224.  She easily clears that hurdle.  Any record of what was discussed during the relevant meetings could indicate whether MPAA indeed considered Long for inclusion in the RIF before she engaged in any protected activity.  They

may also reveal if MPAA included her in the RIF for an improper reason, or for some other reason unrelated to those that MPAA has advanced in this litigation.

The burden thus shifts to MPAA to explain why discovery should not be permitted—in this case, why it is entitled to work-product protection.  Id.  The work product doctrine "protects only work performed in anticipation of litigation or for trial."  Boehringer, 778 F.3d at 149 (citing Senate of the Commonwealth of P.R. v. U.S. Dep't of Justice, 823 F.2d 574, 586 (D.C. Cir. 1987)).  "[T]he burden of showing that the materials were prepared in anticipation of litigation is on the party asserting privilege."  Alexander v. FBI, 192 F.R.D. 42, 46 (D.D.C. 2000); see also Zelaya v. UNICCO Serv. Co., 682 F. Supp. 2d 28, 38 (D.D.C. 2010) (requiring party asserting privilege to "present affidavits or other competent evidence" with sufficient detail for court to evaluate if privilege "was properly invoked").  To determine whether a document was prepared in anticipation of litigation, the D.C. Circuit has adopted a "because of" test— "inquiring 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'"  Boehringer, 778 F.3d at 149 (quoting United States v. Deloitte LLP, 610 F.3d 129, 137 (D.C. Cir. 2010)).  "Where a document would have been created in substantially similar form regardless of the litigation, work product protection is not available."  Id. (internal quotation marks omitted).

MPAA argues that McMahon's notes were prepared in anticipation of litigation, pointing to statements in her sworn declaration that she was present in these meetings to keep track of potential legal risk arising out of the mass layoff.  See Def. Opp. at 15–16 (citing McMahon Decl. at ¶¶ 6–9).  Long disagrees.  She contends that MPAA has failed to show McMahon attended these meetings in her capacity as an attorney, rather than as a business advisor.  See Pl.

Reply at 2–3.  She also claims MPAA's stated rationale for McMahon's participation—to flag issues for potential future litigation—is too vague and speculative to satisfy the "in anticipation of litigation" standard.  Id. at 3–6.

Long correctly notes that an in-house attorney acting as a business advisor cannot shield her work under the attorney-work-product privilege.  As the D.C. Circuit has recognized, in discussing the related attorney-client privilege, in-house counsel may have "certain responsibilities outside the lawyer's sphere," and may not always act in "a professional legal capacity."  In re Sealed Case, 737 F.2d 94, 99 (D.C. Cir. 1984) ("Sealed Case II").  For that reason, courts in this district have recognized that documents may "not enjoy protection under . . . the work product doctrine because they communicate business advice provided in the ordinary course of . . . business," rather than legal advice.  W. Trails, Inc. v. Camp Coast to Coast, Inc., 139 F.R.D. 4, 13 (D.D.C. 1991) ("To the extent [counsel] was acting in a business capacity, there is no protection for these communications.").  In particular, work product protection does not apply to an attorney's notes that "effectively transcribe an unprivileged conversation," but will "apply if the notes reflect an attorney's mental impressions and . . . were prepared in anticipation of litigation."  Loftin v. Bande, 258 F.R.D. 31, 35 (D.D.C. 2009).

Here, MPAA has satisfied its burden to show McMahon prepared these notes in her capacity as an attorney and in preparation for litigation.  In similar contexts, the D.C. Circuit has found convincing statements from an attorney "that he was acting at all times with an eye toward litigation."  Sealed Case I, 676 F.2d at 811 (internal quotation marks omitted).  That court has also found relevant that documents prepared by in-house counsel "were not meant for any eyes but their author's."  Id.  The circumstances here are similar.  In her sworn declaration, McMahon

attested to "attend[ing] meetings discussing th[e] reduction-in-force in [her] capacity as the

MPAA's attorney."  McMahon Decl. at ¶ 7.  She elaborated that she was there "to provide legal

guidance" because, "given the large number of employees being laid off, there was concern that

any one of the seventeen individuals ultimately included in the layoff could pursue litigation."

Id. at ¶ 8.  The resulting "handwritten notes," she explained, "record[ed] the issues that arose and

were discussed," but also represented her "thoughts and opinions about legal issues that needed

to be addressed by either [herself] or outside counsel in connection with the layoffs."  Id. at ¶¶ 9–

10.  There is no evidence that these notes were ever circulated or shown to any other participant,

strengthening MPAA's claim that McMahon took them to help form her own legal judgments.

See Def. Opp., Ex. 11 (deposition testimony of another meeting participant noting she had never

seen any notes of meetings about the RIF).

        In response, Long asserts that the specter of litigation was too remote for McMahon's

notes to qualify as part of any litigation prep.  The Court disagrees, on both the legal standards

and the facts of this case.  Where lawyers act "as legal advisors protecting their . . . clients from

the possibility of future litigation," the D.C. Circuit has not required that any "specific claim"

have already arisen for material to be prepared in anticipation of litigation.  In re Sealed Case,

146 F.3d 881, 885 (D.C. Cir. 1998) ("Sealed Case IV").  As that court recognized, "[i]t is often

prior to the emergence of specific claims that lawyers are best equipped either to help clients

avoid litigation or to strengthen available defenses should litigation occur."  Id. at 886.  That

reasoning applies with full force here.  McMahon has attested in her declaration that she

participated in the meetings to address "concern that any one of the seventeen individuals

ultimately included in the layoff could pursue litigation."  McMahon Decl. at ¶ 8.  The Court

therefore finds this context distinguishable from the out-of-circuit district court case that Long

relies on heavily, <u>Freiermuth v. PPG Industries, Inc.</u>, 218 F.R.D. 694 (N.D. Ala. 2003).  Unlike in <u>Freiermuth</u>, there is evidence McMahon and the MPAA believed the layoff was "unusual," and that "the large scale reduction in force proposed by defendant would likely result in litigation."  <u>See</u> 218 F.R.D. at 700.  Indeed, Ms. Long sued—exactly the litigation risk McMahon and MPAA predicted might materialize.  Because it appears McMahon "had a subjective belief that litigation was a real possibility," and that this belief was "objectively reasonable," <u>Sealed Case IV</u>, 146 F.3d at 884, the Court concludes MPAA has satisfied its burden to show the notes were prepared in anticipation of litigation.

Ordinarily, at this juncture the Court would ask whether Long has shown sufficient need for this protected work-product material.  <u>Boehringer</u>, 180 F. Supp. 3d at 191–200.  However, the Court need not engage in that analysis because, as explained below, MPAA has waived its claim of privilege.

b.  <u>Waiver</u>

MPAA's voluntary disclosure of four pages of the notes during this dispute operated as a waiver of any work-product protection.[3]  Unlike with attorney-client privilege, a party does "not necessarily waive work-product protection" by voluntary disclosure to a third party.  <u>Deloitte LLP</u>, 610 F.3d at 139.  "Nevertheless, disclosing work product to a third party can waive protection if "such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary."  <u>Id.</u> at 140 (internal quotation marks omitted).  To

---

[3]  MPAA sent these notes to both opposing counsel and the EEOC.  Because the Court is satisfied MPAA waived any privilege through disclosure to Long's attorneys, it does not address whether handing them over in response to an EEOC charge likewise effected a waiver.

determine if voluntary disclosure waives work-product protection, courts in this Circuit consider whether:

> (1) the party claiming the privilege seeks to use it in a way that is not consistent with the purpose of the privilege; (2) the party had no reasonable basis for believing that the disclosed materials would be kept confidential by the [plaintiff]; and (3) waiver of the privilege in these circumstances would not trench on any policy elements now inherent in this privilege.

United States v. Williams Cos., Inc., 562 F.3d 387, 394 (D.C. Cir. 2009); see also In re Subpoenas Duces Tecum, 738 F.2d 1367, 1372 (D.C. Cir. 1984).  Applying those factors here, the Court concludes MPAA waived work-product protection when it released a redacted version of the McMahon notes to Long's counsel during pre-suit settlement negotiations.

First, disclosure to attorneys for Ms. Long—an adversary threatening suit—is not consistent with the purposes of the work-product privilege.  The parties' efforts at the time to reach a mutually agreeable settlement is not enough to transform Long into "a party with common interests."  Williams, 562 F.3d at 394; see also Doe No. 1 v. United States, 749 F.3d 999, 1008 (11th Cir. 2014) (explaining that "common goal of reaching a quick settlement" does not destroy adversary status); In re Chrysler Motors Corp. Overnight Evaluation Program Litig., 860 F.2d 844, 846 (8th Cir. 1988) ("Disclosure to an adversary waives the work product protection as to items actually disclosed, even where disclosure occurs in settlement.").

Second, MPAA had no reasonable basis for believing the disclosed material would be kept confidential.  As the D.C. Circuit has explained, "[a] reasonable expectation of confidentiality may derive from common litigation interests between the disclosing party and the recipient" or "may be rooted in a confidentiality agreement or similar arrangement between the disclosing party and the recipient."  Deloitte, 610 F.3d at 141.  Neither exists here.  As already explained, Long was an adversary without any common litigation interest.  And, though MPAA

argues to the contrary, <u>see</u> Def. Opp. at 17, no communication between the parties evinces a confidentiality agreement sufficiently "strong and sufficiently unqualified to avoid waiver." <u>Deloitte</u>, 610 F.3d at 141.   MPAA points only to a series of emails in the summer and fall of 2017 as evidence of a confidentiality agreement.  In the most relevant email, from August 4, 2017, MPAA's outside counsel memorialized the terms of a confidentiality agreement when sharing a *separate* set of documents.  <u>See</u> Pl. Mot. Compel, Ex. 18.  That email stated only that Long's counsel had "agreed to maintain the confidentiality of these documents and not to use them for any purposes other than a possible settlement."  <u>Id.</u>  MPAA contends that this statement is sufficient to avoid waiver of work-product protection for other documents shared months later.

The Court does not read this confidentiality language so broadly.  In that same email, counsel for MPAA stated that the documents she shared—the ones that should be kept "confidential[]"—had also been redacted in part to protect attorney-client privileged information. <u>Id.</u>  This statement suggests that, whatever "maintain the *confidentiality*" meant, it did not refer to preserving privileges.  Further communications between the parties—all of which occurred before MPAA shared the McMahon notes—confirms this narrow reading of the parties' agreement.  In later emails that fall, counsel for each side disputed whether this "confidentiality" agreement prevented the waiver of any privilege.  <u>See</u> Pl. Mot. Compel, Ex. 19, at 1–2.  As far as the Court can tell, the parties never resolved this disagreement.  Yet even *after* airing their divergent views about the waiver of privilege, counsel for MPAA sent the McMahon notes to Long and her counsel.  <u>See</u> Pl. Mot. Compel, Ex. 17.  The Court recognizes that, in the email attaching these notes, MPAA's counsel stated that privileges were "not waived per agreement of the parties."  <u>Id.</u>  But, based on the email exchanges just described, the Court discerns no meeting of the minds on this issue.  Rather, the most recent communication from Long's counsel

gave no indication he acceded to an agreement to maintain privileges. <u>See</u> Pl. Mot., Ex. 19, at 1. When MPAA chose to share the McMahon notes anyway, it thus did so without any reasonable basis that work-product protection would be preserved.

Finally, a finding of waiver here would not undermine any relevant policy. Crucially, MPAA hasn't identified any reason to excuse the waiver. Nor can the Court find any. In fact, the Court believes waiver would be especially appropriate given MPAA's selective disclosure of the notes to aid its position in settlement discussions and its express reservation of its right to use the notes at summary judgment and trial. <u>See</u> Def. Opp. to Mot. Reopen at 12 & n.8 (noting that it "does not need to rely on Ms. McMahon's notes" but reserving its right to do so because parties "were unable to agree to a stipulation"). In this context, and given the other signals supporting a waiver, the Court finds it appropriate to allow Long access to this same material at this juncture.

c.  <u>Scope of Waiver</u>

Having found waiver, the Court now has discretion to determine its scope. <u>See</u> <u>In re Sealed Case</u>, 877 F.2d 976, 981 (D.C. Cir. 1989) ("<u>Sealed Case III</u>"). Unsurprisingly, the parties propose opposite approaches. MPAA urges the Court to define the scope as narrowly as possible: limited to the four corners of the four pages of redacted notes already released to Ms. Long's counsel during settlement discussions. <u>See</u> Def. Opp. at 18–19. Long, by contrast, asks for a "broad[] subject matter waiver": requiring disclosure of, at a minimum, all of McMahon's notes, and potentially any other documents relating to the RIF as to which MPAA has claimed privilege. <u>See</u> Pl. Reply at 14, 20. As explained below, the Court will follow a middle path, ordering the complete production of the relevant McMahon notes, subject to some limited redaction.

As an initial matter, the Court concludes that MPAA's actions do not justify finding a broad subject-matter waiver as to other items—beyond the McMahon notes—related to the RIF. The Court has the discretion, accounting for the facts of the case, to "limit[] the scope of the alleged waiver to all other communications relating to the same *specific* subject matter, as opposed to the same subject matter." In re United Mine Workers of Am. Emp. Benefit Plans Litig., 159 F.R.D. 307, 309 (D.D.C. 1994) (internal quotation marks omitted). Because the arguments here all center on a single set of documents arising out of a series of discrete meetings, the Court finds it appropriate to define the subject matter narrowly to notes taken by McMahon during the relevant meetings relating to the RIF.

But, to prevent MPAA from benefiting from its partial disclosure of McMahon's notes, the Court will require it to disclose other pages of the notes mentioned in its privilege log but not yet produced to the plaintiff. In settlement discussions, MPAA disclosed to Long's counsel notes from four different meetings that, it said, "demonstrat[e] that Ms. Long had been identified for a layoff long before" any protected activity. Pl. Mot. Compel, Ex. 17. In its privilege log, MPAA lists notes bearing the dates of some, but not all, of those four meetings. Pl. Mot. Compel, Ex. 8. It also lists notes from three other meetings, which neither the plaintiff nor the Court has seen in whole or in part. Id. The Court has no way to know whether those notes— unlike the ones voluntarily released—similarly support MPAA's position. Thus, while the Court is not suggesting that MPAA cherry picked from McMahon's notes, it could be that MPAA "deliberately disclosed documents in an attempt to gain a tactical advantage." In re United Mine Workers, 159 F.R.D at 312. Because MPAA apparently "was only sending documents" that supported its position and could have been "withholding any documents (if they exist) that might suggest otherwise," a limited subject-matter waiver is appropriate. Bowles v. Nat'l Ass'n of

Home Builders, 224 F.R.D. 246, 259 (D.D.C. 2004); see also Sealed Case I, 676 F.2d at 818

(explaining that, while "selective disclosure" can be consistent with the purposes of the work-

product privilege, "at some point acceptable tactics may degenerate into sharp practices inimical

to a healthy adversary system").  The Court will therefore order production of any other pages of

McMahon's meeting notes reflecting discussions about the RIF.

That said, MPAA may redact any material that involves topics other than the RIF, truly

reflects Ms. McMahon's mental impressions and legal analysis, or implicates other valid

privileges or protections.  As noted, Rule 26 sets a far higher standard for disclosure of "*opinion*

work product, which reveals the mental impressions, conclusions, opinions, or legal theories of a

party's attorney or other representative concerning the litigation," than for "*fact* work product,

which does not."  Boehringer, 778 F.3d at 151.  Reviewing the redacted pages already disclosed

to Long, the Court finds that MPAA thus far appears to have disclosed only fact work product

related to the RIF.  The pages seem to detail the logistics of the RIF relevant to McMahon's legal

advice, but not any mental impressions or opinions.  Given the obligation to "protect against"

disclosure of opinion work product, see Fed. R. Civ. P. 26(b)(3)(B), the Court sees good reason

to limit the waiver to similar fact material.

B. Privilege Log

In her Motion to Compel, Long next challenges the sufficiency of MPAA's privilege log,

and requests that the Court remedy the problem by ordering disclosure of all listed material.[4]

Long's objection comes too late.  In general, parties must timely raise objections to both

---

[4] Four of the documents on MPAA's privilege log are McMahon's notes, which the Court has already ordered released subject to redaction.  See Pl. Mot. Compel, Ex. 8.  The remaining six documents contain emails over which MPAA has claimed attorney-client privilege.  See id.

discovery requests and the sufficiency of discovery responses.  See Caudle v. District of Columbia, 263 F.R.D. 29, 33 (D.D.C. 2009) ("[U]ntimely objections to discovery requests are waived."); United States v. All Assets Held at Bank Julius Baer & Co., No. 04-cv-798, 2019 WL 1167743, at *3 (D.D.C. Mar. 13, 2019) (gathering cases denying objections raised after the close of discovery or too close to the close of discovery to be resolved prior to the deadline).  The Court concludes Long did not do so.

Ms. Long's challenge is untimely because it was not among the discovery issues she raised either with MPAA at the close of discovery or with this Court in her motion to reopen. Long first addressed the sufficiency of MPAA's privilege log in a January 2020 email to MPAA counsel.  See Pl. Mot. Compel, Ex. 20.  In immediate follow-up emails, the parties debated MPAA's obligation to include additional detail in its log.  See id.  But there is no record of Long ever mentioning the privilege-log issue after January 2020.  Crucially, Long's counsel did not list it as one to be resolved in a set of email exchanges before the close of discovery in November 2020.  See Pl. Mot. Reopen, Ex. 3.  Nor did he bring up the privilege log while briefing the motion to reopen discovery.[5]  That motion mentioned only the "production of additional documents relating to Kelly McMahon's notes, including unredacted copies of those notes."  Pl. Mot. Reopen at 3.  While this statement hinted at the possibility of other documents, it did not provide enough notice to either MPAA or the Court that an argument about the privilege log remained live.  Because the privilege-log objection is not fairly encompassed in the discussion of

_____

[5] Long's sole response to MPAA's timeliness argument is to point out the Court's observation, at the hearing on the motion to reopen, that much of the delay in litigating the discovery disputes could be attributed to the mediation stay in place for much of 2021.  See Pl. Reply at 21–22.  But that stay does not excuse Long's failure to raise the privilege-log objection to MPAA at the close of discovery or to this Court when asking to reopen discovery.

the McMahon notes at the motion to reopen stage, the Court finds it is both untimely and outside the scope of the Court's limited order reopening discovery.

C. Depositions

Finally, Long asks the Court to order the deposition of two of MPAA's in-house attorneys at the time of the RIF—then-Corporate Counsel Kelly McMahon and then-General Counsel Steven Fabrizio.  See Pl. Mot. Compel at 3, 31–32.  For the reasons below, the Court will allow a limited deposition of McMahon but deny any effort to depose Fabrizio. [6]

Normally, the party objecting to a deposition "bears the burden of showing an undue burden, and that burden of proof is particularly great when the party seeks to prevent a deposition entirely rather than merely modify it."  Guantanamera Cigar Co. v. Corporacion Habanos, S.A., 263 F.R.D. 1, 8 (D.D.C. 2009).  But this baseline rule is altered when the potential deponent is opposing counsel, as "[c]ourts in our Circuit generally disfavor the practice of deposing opposing counsel."  United States v. Newman, No. 19-cv-1868, 531 F. Supp. 3d 181, 2021 WL 1026019, at *7 (D.D.C. Mar. 17, 2021) (citing Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co., 276 F.R.D. 376, 380 (D.D.C. 2011)).

─────────────────────

[6] Long contends that MPAA waived any objection to these depositions by failing to move for a protective order after the depositions were noticed.  See Pl. Mot. Compel at 32.  Under the circumstances here, the Court declines to find any waiver.  At the time of the deposition notice, Fabrizio was no longer employed by MPAA.  So, once the defendant declined to voluntarily produce him, it was Long's responsibility to subpoena him, not MPAA's responsibility to oppose the notice.  See Simms v. Ctr. for Corr. Health & Pol'y Stud., 272 F.R.D. 36, 41 (D.D.C. 2011).  And as to McMahon, the Court notes that, based on the communications between the parties at the close of discovery, it remained unsettled whether Long planned to push for the deposition and MPAA would need to "move for a protective order."  Pl. Mot. Compel, Ex. 23, at 10.  Given this uncertainty, the Court will not punish MPAA for waiting for a motion to compel.  Besides, Rule 26 authorizes the Court, "on its own," to limit the "extent of discovery otherwise allowed by these rules" if it determines that "the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C).  The Court is thus satisfied it has the power to take up MPAA's arguments about both depositions.

"The D.C. Circuit has not articulated a controlling test for evaluating requests to depose attorneys, and courts faced with that issue have applied divergent standards." Id.  Under Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986), which courts in this district have applied at least to efforts to depose trial counsel, a party seeking a deposition must show that "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case."  Guantanamera Cigar Co., 263 F.R.D. at 8; see also Jennings v. Fam. Mgmt., 201 F.R.D. 272, 277 (D.D.C. 2001).  But, as another court in this district has recently observed, that "stringent" Shelton test may only apply "to depositions of trial counsel—or counsel directly representing the party in the pending litigation—and then *only* if the deposition would reveal litigation strategy in the pending case."  Newman, 2021 WL 1026019, at *7. "Shelton does not apply where [the] deposing party seeks information about non-privileged, pre-litigation factual matters, and not about the deponent-attorney's litigation strategy."  Id. (cleaned up).  The Court need not determine which test applies to in-house counsel like McMahon and Fabrizio, as it would reach the same outcomes on each deposition under any relevant test.  Cf. Mannina v. District of Columbia, 334 F.R.D. 336, 340 (D.D.C. 2020) (noting disagreement between district courts about when to apply each standard but deciding under Rule 26).

The Court will compel a limited deposition of McMahon.  Even under the more stringent Shelton test, see Guantanamera Cigar Co., 263 F.R.D. at 8, the plaintiff is entitled to depose McMahon about any nonprivileged information related to her meeting notes.  First, there are no better means of obtaining information about the contents of her notes than by deposing McMahon.  Second, the information sought is relevant because it relates to the rationale for Long's firing, an issue at the heart of the discrimination and retaliation claims.  Still, the Court

will limit the information sought to nonprivileged matters.  MPAA may raise work-product and

attorney-client privilege objections to any questions that go beyond the scope of McMahon's

notes, and plaintiff's counsel is admonished to steer clear of these areas.  Finally, information

about what occurred during the 2016 and 2017 meetings—particularly the timeline of Long's

inclusion in the RIF—is crucial to the preparation of the case.  Thus, in line with the Court's

decision to compel limited disclosure of the meeting notes, Long is entitled to depose McMahon

as to factual, nonprivileged material related to discussions about the RIF during those meetings.

But the Court will not compel the deposition of Fabrizio at this time, and will only do so

if the remaining pages of McMahon's notes reveal he was personally involved in Long's

inclusion in the reduction-in-force.  The Court recognizes that Long seeks to depose Fabrizio

"about non-privileged, pre-litigation factual matters"—the circumstances of her firing—and "not

about [the deponent-attorney's] litigation strategy."  Newman, 2021 WL 1026019, at *7.  As a

result, the more stringent Shelton test, and the strong presumption against depositions of

opposing counsel about litigation matters, may not apply.  Id.  But even under the general

dictates of Federal Rule of Civil Procedure 26, the Court has discretion to limit discovery based

on, among other things, "the importance of the discovery in resolving the issues" and "whether

the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P.

26(b)(1)–(2).  The Court will do so here.

Given the lack of evidence of his direct involvement in Long's firing, the risk of

encroachment on privileged topics, and the need to avoid potentially harassing discovery, the

Court will not allow Long to depose Fabrizio.  As of now, Long has provided no evidence that

Fabrizio directly participated in the RIF generally or her firing specifically. She points only to his

position as General Counsel, his inclusion on some privileged email chains, and the fact that the

RIF was a "big project" for MPAA.  <u>See</u> Pl. Reply at 16–17.  But the Court will not compel an attorney deposition based largely on an assumption that the General Counsel must have been "apprised of" the decisions.  <u>Id.</u>  Such an assumption also runs counter to the sworn statement in McMahon's declaration that Fabrizio did not "make decisions surrounding the employee layoffs" or otherwise "involve himself in granular day-to-day employment issues."  McMahon Decl. at ¶ 10.

    Nor is the possibility of uncovering "me too" or *modus operandi* evidence about Fabrizio's sexual misconduct—all of which occurred outside the workplace—enough reason to compel the deposition.[7]  To be sure, information "need not be admissible in evidence to be discoverable."  <u>See</u> Fed. R. Civ. P. 26(b)(1).  But it also must be "relevant to a[] party's claim or defense and proportional to the needs of the case."  <u>Id.</u>  Likewise, "discovery should be denied when a party's aim is to . . . embarrass or harass the person from whom he seeks discovery," rather than "seek . . . information" that may have "bearing . . . on issues in the case." <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 352 & n.17 (1978).  Given the attenuated connection between Mr. Fabrizio's personal conduct and Ms. Long's case, as well as the lack of evidence of his direct participation in her firing, the Court concludes that any deposition of him is outside the scope of discovery.  Should the remainder of the McMahon notes reveal Fabrizio was in fact involved in the decision to fire Long, the plaintiff may seek reconsideration of this decision.

---

    [7] In July 2021, Mr. Fabrizio pled guilty in D.C. Superior Court to sexual abuse and blackmail in a matter unrelated to his work at MPAA.  <u>See</u> Docket Entry of July 30, 2021, <u>United States v. Fabrizio</u>, No. 2019-CF1-010989 (D.C. Super. Ct.).

## IV.   Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that [25] Plaintiff's Motion to Compel is GRANTED in part and DENIED in part.  It is further

**ORDERED** that, consistent with this Opinion and Order, Defendant shall produce to Plaintiff within seven days of this Order a copy of any notes related to the reduction-in-force that Kelly McMahon took during the relevant meetings, redacted only for opinion work product.  It is further

**ORDERED** that Defendant shall make Ms. McMahon available for a deposition on a mutually available date within 60 days of this Order, limited to the contents of her notes and the non-privileged discussion of the reduction-in-force during those meetings.  It is further

**ORDERED** that the parties shall file a joint status report within seven days after Ms. McMahon's deposition proposing a scheduling order for further proceedings in this matter.

**SO ORDERED**.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: <u>November 22, 2021</u>