UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**CHONTE LONG**,

        Plaintiff,

        v.

**MOTION PICTURE ASSOCIATION OF AMERICA**,

        Defendant.

Case No. 19-cv-2088 (CRC)

## OPINION AND ORDER

Plaintiff Chonte Long served as an administrative assistant with Defendant Motion Picture Association ("MPA") until she was terminated in the summer of 2017, ostensibly as part of a reduction in force associated with MPA's temporary move to a different facility. Long sued alleging sex discrimination and retaliation in violation of Title VII of the federal Civil Rights Act and the D.C. Human Rights Act. In a previous opinion, this Court denied MPA's motion for summary judgment, concluding that a reasonable jury could find that Long's termination was motivated by her sex and/or retaliation for her support of discrimination complaints made by some of her coworkers. See Mem. Op. at 13–29. MPA has now moved for reconsideration of the Court's denial of summary judgment as to Long's sex discrimination claim. The Court will deny the motion.

Because the Court detailed the factual and procedural background of this case in its last opinion, it will proceed directly to analyzing MPA's arguments. First, MPA emphasizes the fact that the layoff in which Long was included terminated more men than women—specifically, ten men compared to seven women. MPA is free to argue to a jury that the gender proportionality of the reduction in force is evidence that Long's sex played no role in her termination, but the

breakdown does not require the Court to find that no jury could find otherwise. As the Court explained in its previous opinion, the layoff ultimately "included 17 employees—three engineers who worked in the building, the projectionist who had helped show in-house film screenings, twelve kitchen or wait staff, and Long," and of that group, Long "was the only individual whose job was not linked directly to the facilities or event spaces at MPA's former Eye Street location." Id. at 10. Although some of Long's work revolved around MPA's hosting of events, she also performed accounting and payroll work, distributed office mail, covered secretarial functions, and provided other administrative support, as needed, to MPA Vice President of Administration Kathy Grant. Id. at 2 (citing record evidence). What's more, Long pointed to evidence that MPA would continue to host events at other venues, and a jury could therefore conclude that Long's work related to event hosting—such as managing vendors, preparing event schedules, and working with movie prints—would still be needed even after the relocation. Id. at 18. In light of this evidence, as far as the reduction in force is concerned, a jury could conclude that Long was essentially in a category of one (or two, counting Germaine Seagers, who was also originally part of the layoff). The fact that more men than women were terminated is beside the point when there was a perfectly sensible reason to terminate those other employees—the relocation—but that reason simply does not apply to Long.

The cases MPA cites do not change the Court's conclusion. Even if a jury decided that Long's job was as connected to MPA's Eye Street facility as the other employees' work was, showing another employee outside the plaintiff's protected class was treated better is only "[o]ne way" for a plaintiff to show "that an adverse action gives rise to an inference of discrimination," and the gender proportionality of a layoff is not dispositive when there is "other evidence that would give rise to an inference of discrimination," such as Long's showing here that MPA's

proffered reason for her termination was pretextual.  Udoh v. Trade Ctr. Mgmt. Assocs., 479 F. Supp. 2d 60, 64–65 (D.D.C. 2007); see also Bowles v. Gov't of D.C., Civ.A. No. 92-0649, 1993 WL 100085, at *6–7 (D.D.C. Feb. 17, 1993) (finding no inference of age discrimination when age of terminated employees was proportionate to workforce *and* there was no evidence that defendants' legitimate, non-discriminatory reason was false); Murray v. Gilmore, 406 F.3d 708, 711, 716 (D.C. Cir. 2005) (permitting sex claim to survive summary judgment despite the fact that more men than women initially were identified for termination).  To the extent MPA's treatment of other employees is relevant, see Hogan v. Hayden, 406 F. Supp. 3d 32, 51–52 (D.D.C. 2019), some facts along those lines also point in Long's favor—for instance, that the only other employee whose job was not tied up with the Eye Street location who was targeted for termination was Germaine Seagers and that many of Long's duties were assumed by a man, see Mem. Op. at 7, 26–28.

      Next, MPA disputes one of the other reasons why the Court concluded a jury could find that Long's termination was motivated by her sex—the fact that she was functionally replaced by a man, Sean Saleem.  The Court is not persuaded by MPA's arguments.  First, MPA asserts that the Court's opinion "inaccurately states" Saleem's title, referring to him as a "Facilities/Office Assistant" rather than MPA's preferred title of "Facilities Assistant."  Mot. for Recons. at 8–9.  To the extent this distinction is even relevant (and the Court doubts that it is), the Court's description of Saleem's title was supported by evidence in the record, specifically MPA's notes during the layoff planning that called Saleem's position "office ass[istant]," Mem. Op. at 7, and an email from a staffing company that connected Saleem with MPA referring to the position title as "Facilities/Office Assistant," id. at 11.  Whatever label MPA ultimately chose, a jury could conclude from this evidence that MPA conceived of Saleem's role as involving not only

"facilities" activities, like maintenance, but also "office" activities, like mail and reception duties.

On that note, MPA is mistaken that the Court failed to consider the differences between Saleem's role and Long's job.  As the Court explained at length in the memorandum opinion, and will not repeat at length now, the notes from MPA's layoff planning showed a concerted effort to include Long in a layoff that otherwise targeted dissimilar employees, to "backfill" or "outsource" rather than completely eliminate her role, and to reallocate many of her job duties either to Germaine Seagers or to Saleem.  Mem. Op. at 5–7, 17–18.  The record further shows that Saleem was hired to start the next business day after Long's departure date and that there was, ultimately, substantial overlap between Long's old role and Saleem's new one—for instance, reporting maintenance issues, interacting with vendors, coordinating special events, distributing mail, managing conference room use, serving as a back-up receptionist, and doing other work as assigned by Kathy Grant.  Id. at 11, 18–19 & n.3; see also MSJ Ex. G, Ex. 7; Opp. to MSJ Ex. 54.  To be sure, the two positions may not be identical, but what matters is that "the *relevant aspects* of [Long's] employment situation were 'nearly identical' to those of" Saleem.  Neuren v. Adduci, Mastriani, Meeks & Schill, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (emphasis added).  In any event, any differences in Saleem's and Long's duties are far from dispositive in light of the evidence that MPA wanted to sack Long "sooner" than the relocation that MPA maintained had prompted her termination and the internal notes showing the reallocation of Long's duties to Saleem's new role.  Mem. Op. at 5.

MPA also asserts that it is irrelevant that Long was capable of performing some of the tasks Saleem took over that she had not previously performed.  The Court begs to differ.  The fact that Long was capable of performing those duties, combined with the fact that she did

perform many of Saleem's duties, could lead a jury to conclude that Saleem's position was more of a modification of Long's job rather than a brand-new, completely distinct position. Moreover, that Long could have done many of Saleem's tasks, that MPA started Saleem just after Long left, and that MPA never even asked Long whether she would be interested in a modified position (which presumably would have saved MPA costs in finding and training a new outside hire) supports the reasonable conclusion that MPA's goal was to get rid of Long and replace her with Saleem.

Last, MPA contends that the Court should have given more weight to Kathy Grant's deposition testimony that some 80% of Long's job responsibilities were eliminated and that the remaining 20% were absorbed by Germaine Seagers, a woman. See Mem. Op. at 18 n.3. As the Court explained in its last opinion and has reiterated above, however, Long identified substantial evidence in the record supporting the inference that Saleem was hired to take over and did in fact assume a significant number of Long's previous job duties. Additionally, a jury could view Grant's off-the-cuff 80% figure as more akin to a "guesstimate" than a statistical certainty; when pressed on the estimate in her deposition, Grant conceded she "wasn't good at the percentages" and, understandably, that "[i]t's hard to quantify" the amount of time Long or Saleem spent on any particular task "in percentages." Opp. to MSJ Ex. 4 at 177, 181. Even taking her math at face value, Grant's 80% estimate assumed that tasks like managing billing relating to event-hosting were eliminated, although Long has pointed to evidence that MPA continued to host events. Id. at 173. She also estimated that Marlon Hallmon, who took over Saleem's role after his departure, spent about 65–70% of his time on tasks like setting up conference rooms and events, backing up reception, and delivering mail—all tasks identical to or very similar to work Long had performed. Id. at 178–81.

The bottom line is this:  The Court acknowledged that the evidence of a gender discriminatory motive would hardly compel the conclusion that MPA discriminated against Long based on her sex.  But the Court could not conclude that no reasonable jury could find sex discrimination under the circumstances of this case.  Long produced evidence from which a reasonable jury could find that MPA's stated reasons for terminating her were contrived, that it reallocated a substantial number of her duties to a man, and that it sought to keep the hiring of Long's male replacement under wraps.  A "jury can conclude that an employer who fabricates a false explanation has something to hide" and that "that 'something' may well be discriminatory intent."  Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1293 (D.C. Cir. 1998) (en banc).  Drawing all reasonable inferences in Long's favor, as the Court must do at the summary judgment stage, the Court still cannot say that no reasonable jury could find evidence of a discriminatory motive here.  Mem. Op. at 26–29.

For these reasons, it is hereby

**ORDERED** that [Dkt. No. 58] Defendant's Motion for Reconsideration is DENIED.

**SO ORDERED**.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: July 20, 2023